GUY D. HILLS, Plaintiff, *v.* THE PRESS COMPANY, Defendant.

Supreme Court, Albany Special Term, January, 1924.

Libel — when publications in newspaper are not libelous per se — when publication and innuendo pleaded deemed not to raise question of fact for jury — when publications held within right of newspaper privilege to fairly comment and criticise — motion for judgment on pleadings dismissing complaint granted.

Where newspaper articles charging plaintiff as a county fuel administrator with favoritism, with aiding certain coal dealers and refusing to aid others, with unfairness and inactivity in his work and the enforcement of orders, and with favoritism in the prosecution of cases, do not impute the commission of a crime or tend to bring him into ridicule and contempt or to disparage him as a public official or to show him unworthy of a public trust, such publications are not as matter of law libelous *per se.*

The innuendo pleaded, so far as it attempts to enlarge rather than explain the alleged libelous matter, held insufficient to make libelous that which from the plain import of the language used is not so, and otherwise, as ascribing a meaning to the alleged libelous publication, not justified by the publication itself as having such meaning.

Both the alleged libelous publications and the innuendo held not to raise a question of fact for a jury to determine or to justify a finding that they are libelous.

As matter of law the alleged libelous matter was within the limit of the privilege of a newspaper to fairly comment and criticise in the public interest and welfare an act of an officer holding a public trust, and defendant's motion under section 476 of the Civil Practice Act for judgment on the pleadings will be granted.

MOTION for judgment on pleadings pursuant to section 476, Civil Practice Act.

*Reilly & Greene,* for plaintiff.

*Hun, Parker & Reilly,* for defendant.

STALEY, J. The defendant moves for judgment, pursuant to section 476 of the Civil Practice Act, and contends that such judgment is warranted by plaintiff's pleading. The complaint sets forth seven separate causes of action for libel. It contains no allegations of special damage.

The test of the sufficiency of the pleading to constitute a cause of action must, therefore, be determined by the character of the publication and whether it is actionable *per se* or whether under any reasonable construction it will convey the meaning ascribed to it by the innuendo pleaded thereunder. *Crashley* v. *Press Publishing Co.,* 179 N. Y. 27; *O'Connell* v. *Press Publishing Co.,* 214 id. 352, 358.

The office of an innuendo is to define the defamatory meaning

which the plaintiff seeks to put upon the words complained of, to show how they came to have the defamatory meaning claimed for them. It is necessary only when the intent may be mistaken or where it cannot be collected from the article itself — it must not put upon the words used a construction which they will not bear — it cannot alter or extend the sense of the words used.

It cannot be said that these publications were in and of themselves libelous, unless the language used, considered in its ordinary meaning, naturally was so injurious that the court will presume, without any proof, that the reputation or credit of the plaintiff has been impaired, and he has thereby been exposed to public contempt or ridicule or suffered a disparagement in his office.

The test of libel is whether to the mind of an intelligent man the tenor of the article and the language used naturally import a criminal or disgraceful charge. *Rossiter* v. *New York Press Co., Ltd.*, 141 App. Div. 339; *Church* v. *Tribune Association*, 135 id. 30.

The plaintiff at the time of the publication in question was fuel administrator for Albany county, appointed as such by virtue of chapter 673 of the Laws of 1922. While the act referred to provides for no such office as county fuel administrator, it does create the office of state fuel administrator and empowers such officer to appoint such deputies and employees as may be needed and prescribe their powers and duties. There is no allegation in the complaint that the office held by the plaintiff was one created by the state administrator pursuant to his powers or what powers and duties were prescribed for the office held by the plaintiff. It is fair, I think, to assume that his office was related to that of state fuel administrator and to the purposes declared in said act which required governmental regulation and control of the supply of coal during the emergency then existing, and of its equitable distribution to consumers at reasonable prices, and that such office and its duties were so understood by the public generally, and that the pleading must be construed in the light of such understanding, as the articles referred to and touched plaintiff in that capacity.

The act was passed at a special session of the legislature to meet a public emergency of shortage in fuel. Its declared purpose, by its grant of power, was to supervise, regulate and control the receipt, storage, purchase, sale, use and distribution of fuel and to control and compel its allotment and rationing to localities, dealers and consumers. The plaintiff was regarded by the public as the constituted authority to carry out that purpose within the county of Albany. A public crisis was the motive of the enact-

Supreme Court, January, 1924. [Vol. 122

ment of the statute and drastic powers were conferred to effectively deal with the condition in the public interest and for the public welfare.

A newspaper may make fair comment on matters of public concern so long as it is done " with an honest purpose, and not intemperately or maliciously * * * what is privileged is criticism, not other defamatory statements, and if a person takes upon himself to allege matters otherwise actionable, it will not be privileged, however honest his motive if those allegations are not true. When a publisher goes beyond the limits of fair criticism, his language passes into the region of libel, and the question whether those limits have been transcended may become a question of law but ordinarily presents a question for the jury." *Triggs* v. *Sun Printing & Publishing Assn.*, 179 N. Y. 144, 154.

Newspaper comment to come within the privilege of criticism must be confined to the subject-matter of public interest and not include personal attacks upon the private character of a public officer or impute to him an unworthiness in his public trust. *Bennet* v. *Commercial Advertiser Assn.*, 230 N. Y. 125.

Criticism deals only with such things as invite public attention, or call for public comment. It does not follow a public man in his private life. It does not attack the individual, but only his works. The attack of criticism is on a man's act, or on some thing, and not upon the man in his private capacity, personal character or public office. Odgers Lib. & Sland. 195.

A publication to be libelous on a person must in a personal sense impute a crime, the commission of an act involving moral turpitude, or in the case of a public officer touch him in his office and have a tendency to injure him therein by an accusation which would show him unworthy of public trust and a betrayer of civic confidence.

The general principles of the law of libel may be helpful as a basis to determine whether a published article offends the privilege of the publisher or is libelous *per se*, but the fact remains that each publication must be construed as a whole and in the light of the peculiar facts and circumstances of the situation to which it relates.

The publications set forth in the causes of action here in question are lengthy, and it is not necessary to state them here in full. The tenor of the articles is to charge the plaintiff as county fuel administrator with favoritism, with aiding certain coal dealers and refusing aid to others, with unfairness and inactivity in his work and the enforcement of orders, and with a favoritism in the prosecution of cases.

The plaintiff is not charged with any crime. He is not attacked in his personal character. No statement is made involving moral turpitude. While his acts as fuel administrator are characterized, he is not charged with dishonesty, corruption or misconduct in his office.

The plaintiff was exercising a power to supervise, control and compel the allotment of fuel during an emergency. Necessarily such a task, undoubtedly difficult in the extreme, involved the gratification of the desires of some and its denial to others. Such a result was inherent in the discharge of his duties. Criticism and fault finding inevitably follow the disposal of contending claims.

To say that the plaintiff aided some coal dealers and refused aid to others; left one " out in the cold; " had a coal matter " taken from his hands; " was " accused of favoring " some dealers; " closed his eyes to some violations; " that " no official notice had been taken " of an alleged violation; that he had " failed to properly enforce " his orders; or that he was charged with " favoritism," read in connection with the articles containing these statements, and considering the character of the office held by plaintiff, falls short of imputing to the plaintiff an unworthiness in his office or of being susceptible of the construction or meaning that he was a betrayer of his public trust, or guilty of a disgraceful charge.

The acceptance of public office in effect confers the privilege to criticise one's acts, because of the public interest in official administration. Criticism which is untrue may be unjust, but no one can reasonably give to it an effect greater than the law puts upon it and greater than fair public opinion would ascribe to it.

To summarize, it may be stated that it is held as matter of law that the publications are not libelous *per se*, in that they do not impute the commission of a crime, or tend to bring the plaintiff into ridicule and contempt, or disparage him in his office or tend to show him unworthy of a public trust; that the innuendo pleaded, in so far as it attempts to enlarge rather than explain the alleged libelous matter, is insufficient to make libelous that which from the plain import of the language used is not so, and otherwise, as ascribing a meaning to the alleged libelous publication, is not justified by the publication itself as having such meaning; that the publications and the innuendo pleaded thereunder do not raise a question of fact for a jury to determine or justify a finding that they are libelous; and, further, that the articles are within the limit of the privilege of a newspaper to fairly comment and criticise, in the public interest and public welfare, an act of an

officer holding a public trust, and whose acts at the time were of great public concern, as they related to the administration of the distribution and availability of a necessity for life and comfort.

Order may be entered granting judgment on the pleadings, with costs.

Judgment accordingly.